UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| | |
|---|---|
| Susan Cirrito, individually and on behalf of all others similarly situated, | 1:23-cv-00491 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| GSK Consumer Health, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. GSK Consumer Health, Inc. ("Defendant") manufactures a co-packaged combination of active over-the-counter ("OTC") ingredients marketed for "Multi-Symptom Severe Cold" ("TheraFlu") with vitamin C ("Emergen-C") ("Product" or "TheraFlu Plus Emergen-C").



I. NON-PRESCRIPTION TREATMENTS FOR COLD AND FLU

2. The common cold and flu generally refers to an acute, self-limiting viral infection of

the upper respiratory tract with symptoms including fever, sore throat, nasal discharge and congestion, headache and cough.

3. Although there is no known cure, Americans spend over $8 billion annually on non-prescription cough and cold products to relieve its symptoms.

4. These products comprise two categories – over-the-counter ("OTC") drugs and dietary supplements.

5. OTC drugs consist of ingredients determined by the Food and Drug Administration ("FDA") which are proven to treat cold and flu symptoms.[1]

6. Dietary supplements include vitamins and botanical ingredients which are increasingly used to supplement modern, scientifically proven remedies.

7. Since the 1970s, vitamin C has been the most popular dietary supplement, with annual sales over half a billion dollars.

8. In a national survey measuring how people responded when they came down with a cold and/or flu, 41% consume added vitamin C, more than the 37% who consume plenty of water and the 25% who opt for rest or seeing a doctor.

9. Another poll concluded that almost 60% of Americans believe vitamin C is equally effective at treating cold and flu symptoms as traditional OTC products.

10. While consumers value traditional OTC products for colds and flu, they are increasingly seeking such products with more natural, vitamin ingredients like vitamin C.

## II.  PRODUCT LABELING

11. The Theraflu component combines three categories of FDA-approved OTC

---

[1] New York has adopted the FDA regulations and guidance pertaining to the individual labeling of these components and their co-packaging.

ingredients, including acetaminophen, dextromethorphan HBr and phenylephrine HCl.

12. These ingredients have been determined to provide relief to those suffering from "Cough, Nasal Congestion, Sore Throat Pain, Headache, Body Ache and Fever," listed on the front label.

13. The front label of the Emergen-C component is identified as "Immune + (plus symbol)," a "Dietary Supplement" containing a "Proprietary Complex" of "1,000 mg Vitamin C" and "Vitamin D & Zinc," above two fresh oranges and the words, "Super Orange."

14. The co-packaging of Theraflu with Emergen-C in a "convenience pack" is misleading because consumers will expect the latter is comparably effective and intended to be used with the FDA-approved OTC medication for the common therapeutic purpose of alleviating cold and flu symptoms.

15. This is because consumers already believe that consumption of vitamins, especially vitamin C, is effective and beneficial in treating cold and flu symptoms.

16. However, the fine print on the lower back corner of the Emergen-C contains an asterisk and FDA-required disclaimer for dietary supplements, stating, "These statements (about the Product) have not been evaluated by the [FDA]. This product is not intended to diagnose, treat, cure or prevent any disease."




17. The FDA considered, but rejected approved OTC combination drugs like Theraflu from including vitamin C and other vitamins and botanical ingredients in their formulations.

18. This was because "a panel of experts found 'no study which demonstrated that vitamin C is unequivocally effective for the prevention or treatment of the common cold'" and its symptoms.

19. By including vitamin C in proven cough and cold medications, the FDA determined that consumers would be misled as to their efficacy.

20. Despite numerous clinical studies, vitamin C has failed to demonstrate any reduction in severity or duration of symptoms associated with colds, flu and a runny nose.

21. While a large majority of the public believe that vitamin C can help fight off the symptoms of a cold and flu, this is false.

22. Though some studies have shown that regularly taking vitamin C supplements may decrease the duration of cold and flu symptoms, consuming this after symptoms appear – for which consumers would seek the Product – has no effect.

23. In fact, Consumer Reports concluded that vitamin C consumption could increase the incidence of kidney stones more likely, nausea, stomach discomfort, and negatively interact with a range of medications including blood thinners.

24. While the FDA allowed packaging certain products together as a "convenience pack," the examples it provided included a "travel kit" containing an antiperspirant, an internal analgesic, toothpaste, sunscreen, and/or a sleep aid.

25. The FDA contemplated allowing two or more shrink-wrapped cartons to be sold as one unit identified as a "special value" or "value pack" only when it was clear to consumers the two components were not intended to be used together for a common purpose, such as treating the

symptoms of colds and flu.

26. By selling a proven cough and cold treatment with a vitamin C supplement touted as having immune benefits from its high amounts of vitamin C, consumers are misled as to its efficacy in treating symptoms of coughs and colds.

## Jurisdiction and Venue

27. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

28. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

29. Plaintiff is a citizen of New York.

30. Defendant is a citizen of Delaware and New Jersey.

31. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years from thousands of locations including drug stores, convenience stores, warehouse club stores, grocery stores, big box stores, and/or online, across the States covered by the proposed classes.

32. Venue is in this District with assignment to the Buffalo Division because Plaintiff resides in Niagara County and a substantial part of the events or omissions giving rise to these claims occurred in this Division, including the purchase and/or use of the Product, awareness and/or experiences with the issues described here and became aware the representations were false and/or misleading.

## Parties

33. Plaintiff Susan Cirrito is a citizen of Niagara Falls, New York, Niagara County.

34. Defendant GSK Consumer Health, Inc. is a Delaware corporation with a principal

place of business in New Jersey.

35. Defendant owns and controls the Theraflu and Emergen-C brands, with the former a household staple in treating coughs and colds and the latter the most popular vitamin C supplement.

36. Plaintiff knew that traditionally marketed OTC products like Theraflu, based on established ingredients like acetaminophen, dextromethorphan HBr and phenylephrine HCl, were effective at treating symptoms of cold and flu, like "Cough, Nasal Congestion, Sore Throat Pain, Headache, Body Ache and Fever."

37. Plaintiff read the representations on the front label of the co-packaged Theraflu and Emergen-C, and expected the addition of vitamin C to a proven OTC product would be similarly effective at treating these symptoms of cold and flu, and provide a proven therapeutic benefit.

38. Plaintiff is like the large majority of Americans who believe taking vitamin C helps relieve cold and flu symptoms.

39. Plaintiff is like the large majority of Americans who trust OTC medications but increasingly try to consume vitamins to address cold and flu symptoms.

40. Plaintiff purchased the Product at stores including drug stores and/or big box stores in Niagara County between July 2020 and May 2023, and/or among other times.

41. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $8.99 per 6 Theraflu packets and 30 Emergen-C packets, excluding tax and sales.

42. Plaintiff bought the Product at or exceeding the above-referenced price.

43. Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

44. The value of the Product that Plaintiff purchased was materially less than its value

as represented by Defendant.

45. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

## Class Allegations

46. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Idaho, South Dakota, Kansas, Iowa, Mississippi and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

47. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

49. Plaintiff is an adequate representative because her interests do not conflict with other members.

50. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350
(New York Class)

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff believed the Product expecting the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

55. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

57. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

58. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

59. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

60. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that the addition of vitamin C to a proven OTC

product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

61. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

62. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

63. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

64. Defendant's representations affirmed and promised that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

65. Defendant described the Product so Plaintiff believed that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit, which became part of the basis of the bargain that it would conform to its affirmations and promises.

66. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

67. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its Theraflu line of cough and cold relief products.

68. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

9

69. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

70. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums and/or its website.

71. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

72. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

73. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## Fraud

74. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

75. Defendant is one of the leading sellers of OTC products with immense resources and a highly skilled regulatory division, capable of ensuring its OTC products were represented

truthfully and in accordance with required law and regulations, yet failed to do so.

76. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

77. Defendant knew of the issues described here yet did not address them.

78. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

79. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   June 5, 2023

                                                      Respectfully submitted,

                                                      /s/Spencer Sheehan

Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com